OIN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger

Civil Action No. 18-cv-01211-MSK-NYW

JON C. CALDERA,
BOULDER RIFLE CLUB, INC.,
GENERAL COMMERCE, LLC,
TYLER FAYE, and
MARK RINGER,

    Plaintiffs,

v.

CITY OF BOULDER, and
John Does 1-10,

    Defendants.

_____

**OPINION AND ORDER OF ABSTENTION PURSUANT TO *PULLMAN***
_____

**THIS MATTER** comes before the Court pursuant to the Court's discussion with the parties during a hearing on August 15, 2018 **(# 46)**, and the parties' supplemental briefing on the issue of *Pullman* abstention **(# 48, 49)**.

## FACTS

For purposes of this Order, the pertinent facts of this case are straightforward and undisputed. On May 15, 2018, the City of Boulder adopted Ordinance 8245. That Ordinance amended the Boulder Revised Code to prohibit, within the City of Boulder, the sale or possession of "assault weapons" (defined generally as semi-automatic rifles, pistols, and shotguns having certain specific characteristics) and large-capacity ammunition magazines (defined generally as magazines with a capacity of more than 10 rounds, 15 for pistols), among other things. The Ordinance provided that individuals in possession of such weapons or

1

magazines as of the passage of the Ordinance could choose to retain those items by providing certain information about the items to the Boulder Police Department, undergoing a background check, and obtaining a "certificate" to be kept with the weapon or magazine.[1]

The Plaintiffs – citizens of the City of Boulder and entities with various interests in the sale or possession of weapons within Boulder – commenced this action challenging the Ordinances. Their Amended Complaint **(# 41)** asserts a total of 39 claims, although the bulk of those claims are a core group of seven distinct claims, asserted by each of the five Plaintiffs: (i) a claim that the Ordinances violate the Second Amendment to the United States Constitution; (ii) a claim that the Ordinances violate the Due Process Clause of the Constitution (apparently a substantive due process claim, as it contends that the Ordinance lacks "any legitimate government objective"); (iii) a claim that the Ordinances violate the Takings Clause of the 5th Amendment to the U.S. Constitution, in that the Ordinances "force [the Plaintiffs] to surrender [their] lawfully acquired and lawfully owned property . . . without any government compensation"; (iv) a claim that the Ordinances violate the First Amendment to the Constitution, in that they compel the Plaintiffs "to speak to the Boulder Police Department and provide information about banned, but currently exempted, firearms"; (v) a claim asserting a violation of the Privileges and Immunities Clause of the 14th Amendment to the Constitution, in that the Ordinance deprives them of the rights secured by the Second Amendment; (vi) a claim that the Ordinances violate Article 2, § 13 of the Colorado Constitution, which guarantees citizens the right to keep and bear arms; and (vii) a claim that the Ordinances violate Article 2, § 3 of the Colorado Constitution, which guarantees citizens the right "of enjoying and defending

---

[1] On June 18, 2019, the City passed Ordinance 8259, which amended Ordinance 8245 in certain respects, but which did not fundamentally change the thrust of the prior Ordinance.

their lives and liberties," in that the Ordinance deprives them of their right of self-defense.  In addition, to these core claims (and certain additional claims asserted by certain specific Plaintiffs), two claims by unspecified Plaintiffs seek a declaratory judgment that the Ordinance violates home rule provisions found in C.R.S. § 29-11.7-102 and -103.[2]

The Plaintiffs sought a preliminary injunction **(# 4)** against enforcement of the Ordinance, and on August 15, 2018, this Court conducted a non-evidentiary hearing to address that request.  Among the issues raised by the Court at that hearing was the question of whether it was appropriate for the Court to abstain, on *Pullman* grounds, from hearing the constitutional challenges to the Ordinances until the Plaintiffs' claims under C.R.S. § 29-11.7-103 were resolved.  The Court invited the parties to brief the issue of the appropriateness of *Pullman* abstention, and the parties did so **(# 48, 49)**.

## ANALYSIS

The doctrine of abstention that has become known as the *Pullman* abstention has its origins in the U.S. Supreme Court's decision in *Railroad Comm'n. of Texas v. Pullman Co.*, 312 U.S. 496 (1941).  There, a Texas regulation prohibited passenger railroads from operating trains without a conductor, a regulation that implicated the railroads' ability to employ black persons as sleeper car attendants.  The railroads and certain black employees sued the state railroad commission, arguing that the regulation violated both Texas state law and the Equal Protection and Due Process clauses of the U.S. Constitution.  A trial court enjoined enforcement of the regulation, and the state appealed to the U.S. Supreme Court.  The Court conceded that the

---

[2]  C.R.S. § 29-11.7-102(1) prohibits local governments from "maintaining a list or other form of record or database of" firearms ownership or transfers.
   C.R.S. § 29-11.7-103 provides that local government "may not enact an ordinance . . . that prohibits the sale, purchase, or possession of a firearm that a person may lawfully sell, purchase, or possess understate or federal law."

3

plaintiffs "tendered a substantial constitutional issue," but noted that it "touches a sensitive area of social policy upon which the federal courts ought not to enter unless no alternative to its adjudication is open." 312 U.S. at 498. It observed that "[s]uch constitutional adjudication plainly can be avoided if a definitive ruling on the state issue would terminate the controversy," and explained that, in addressing the question of whether the regulation violated Texas state law, the federal courts could offer only "a forecast rather than a determination" of how state law might apply. The last word, it explained, "belongs neither to us nor the district court, but to the supreme court of Texas." The Court observed that "[t]he reign of law is hardly promoted if an unnecessary ruling of a federal court is thus supplanted by a controlling decision of a state court," and suggested that federal courts should endeavor to "avoid the waste of a tentative decision as well as the friction of a premature constitutional adjudication." Noting that the state courts provided "easy and ample means for determining" the state law issue, the Court declared that the federal court "should exercise its wise discretion by staying its hands" as to the constitutional question and remanded the action back to the district court to "retain the bill" – essentially stay the case – "pending a determination of proceedings, to be brought with reasonable promptness, in the state court." *Id.* at 498-502.

*Pullman* abstention is founded on the notion that federal courts should avoid "premature constitutional adjudication." *Babbit v. United Farm Workers Natl. Union*, 442 U.S. 289, 306 (1979). The danger is that a federal court may render "a constitutional adjudication [ ] predicated on a reading of the [state] statute that is not binding on state courts and may be discredited at any time, thus essentially rendering the federal court decision advisory and the litigation underlying it meaningless." *Moore v. Sims*, 442 U.S. 415, 428 (1979). Thus, *Pullman* abstention is appropriate when three elements are present: (i) an uncertain issue of state law

4

underlies the federal constitutional claim; (ii) the state issues are amenable to interpretation and such an interpretation would obviate the need for or substantially narrow the scope of the constitutional claim; and (iii) an incorrect decision of state law by the federal court would hinder important state law policies. *Kansas Judicial Review v. Stout*, 519 F.3d 1107, 1118-19 (10th Cir. 2008).

### A. **Are the predicate elements for abstention are present?**

Turning first to the existence of "an uncertain issue of state law," the issue is framed by the Plaintiffs' Thirty Ninth Cause of Action. It seeks a declaration that the Boulder Ordinances violate a Colorado State Statute - C.R.S. § 29-11.7-103. Such statute provides that "a local government may not enact an ordinance. . . that prohibits the sale, purchase, or possession of a firearm that a person may lawfully sell, purchase, or possess under state or federal law."[3] It would appear that the Ordinances violate the statute because at least some firearms covered by the Ordinances can be legally-possessed under Colorado and/or federal law.

But C.R.S. § 29-11.7-103 does not exist in a vacuum. It rubs up against Art. XX, Section 6 of the Colorado constitution, which provides generally that municipalities are given the authority to pass laws affecting "local and municipal matters" which "supersede . . . any law of the state in conflict therewith" (sometimes referred to as a "home rule" provision). If the regulation of firearms is a "local and municipal matter," then Art. XX, Section 6 would require that C.R.S. § 29-11.7-103 yield to that local interest. Thus, the question of whether the Ordinances are barred by C.R.S. § 29-11.7-103, or whether that statute yields to Boulder's home

---

[3]  The Plaintiffs argue that, because C.R.S. § 29-11.7-103 encompasses weapons legally possessed under "federal law," "the underlying state law explicitly implicates a question of federal law" and thus falls outside of *Pullman* consideration entirely. For the reasons set forth herein, that argument is without merit.

rule authority turns significantly on the question of whether the regulation of firearms within the city is a "local and municipal matter" or a matter of statewide concern.

The answer to that question is decidedly uncertain and certainly an issue of state, not federal law. As far as this Court is aware, the state courts have squarely considered that question only once. In *City and County of Denver v. State of Colorado*, 2004 WL 5212983 (Colo. Dist. Ct., Denver County Nov. 5, 2004), the City of Denver had passed several municipal ordinances governing the sale or use of firearm within the city limits. Citing the recently-enacted C.R.S. § 29-11.7-103 (sometimes referred to by the courts as "Senate Bill 25"), the State sued, seeking a declaration that Denver's ordinances were preempted; in response, Denver argued that the ordinances addressed local matters within the scope of Denver's home rule rights. Ultimately, the Denver District Court found that several of Denver's ordinances (including a prohibition on the sale of "assault weapons") were properly considered matters of uniquely local concern, trumping C.R.S. § 29-11.7-103's prohibition. The state appealed that ruling to the Colorado Supreme Court, but the Supreme Court split evenly on the issue, with three justices voting to affirm the Denver District Court, three justices voting to reverse, and one justice not participating. *State of Colorado v. City and County of Denver*, 139 P.3d 635 (Colo. 2006). By operation of Colorado Appellate Rule 35(e), the even split by the Supreme Court resulted in the affirmance of the Denver District Court's ruling.

There can be little argument that, where the state's highest court splits evenly on a question of law, that legal question is "uncertain"; indeed, it is hard to conceive of a more potent way of demonstrating such uncertainty. The Plaintiffs here argue that the application of C.R.S. § 29-11.7-103 is not uncertain because "the plain language of" that statute "is clear and unambiguous," as are the principles for determining whether matters fall within the Colorado

6

constitution's "home rule" provisions, such this Court "need only look to the state statutes in question . . . and apply them to the case at hand." But *City and County of Denver* clearly belies the Plaintiffs' contention that the state law determinations to be made here are straightforward and obvious. Surely, they were not straightforward and obvious to the Colorado Supreme Court in 2006, and although the Colorado state courts have spoken generally on the subject of home rule in the interim, the Plaintiffs point to no subsequent decisions that have revisited – much less conclusively resolved -- the particular question of whether municipal firearms regulations constitute matters of local or statewide concern. Thus, the first element of *Pullman* abstention – an uncertain question of state law – is present here.

The second element considers whether the state issue is ripe for review and whether its resolution would obviate the need for a determination of federal constitutionality is also satisfied. The state law issue is ripe, as the Plaintiffs have asserted it as one of their causes of action here. There is no apparent impediment to the Plaintiffs litigating the applicability of C.R.S. § 29-11.7-103 to the Ordinances herein in the state courts, or at least the Plaintiffs have not identified any such impediment (except perhaps time, which the Court addresses below). Likewise, it is clear that if the state courts were to conclude that the Ordinances are preempted by C.R.S. § 29-11.7-103, such determination would nullify the Ordinances and eliminate entirely the need for a determination of whether the Ordinances offend the U.S. Constitution. Thus, the second element of *Pullman* abstention is present as well.

Finally, the third element examines whether an incorrect prediction of state law by this Court would hinder important state policies. Both sides of the state law issue implicate important state rights: on the one hand, the state's interest in the uniform enforcement of firearms laws is a matter of substantial state interest, as reflected by the legislative declaration found in

C.R.S. § 29-11.7-101. On the other hand, the principles of municipal home rule enshrined in the Colorado constitution reflect important state interests as well, given the state's intention to confer upon municipalities the same powers possessed by the state legislature itself, at least as to matters of local concern. *City and County of Denver v. State of Colorado*, 788 P.2d 764, 767 (Colo. 1990). Thus, any incorrect prediction by this Court about the correct interpretation of C.R.S. § 29-11.7-103 and Art. XX, Section 6 of the Colorado constitution will necessarily disrupt an important state interest.

Accordingly, the Court finds that all the predicate elements necessary for *Pullman* abstention are present here.[4]

### B. **Should this Court abstain from hearing this matter?**

Having determined that all the predicate elements for *Pullman* abstention are present, the only remaining question is whether the Court <u>should</u> abstain. Abstention is a discretionary exercise of the Court's equity powers, to be applied only in special circumstances. *Baggett v. Bullitt*, 377 U.S. 360, 375 (1964). The Plaintiffs offer two arguments as to why abstention would be inappropriate: (i) because the Ordinances implicate fundamental rights under the U.S. Constitution; and (ii) because abstention would needlessly delay consideration of the substantial federal questions raised by the Plaintiffs' claims.

---

[4] Occasionally, the Supreme Court makes a passing reference to abstention only being appropriate in "special circumstances." *Baggett v. Bullitt*, 377 U.S. 360, 376 (1964). At least one such circumstance is "the susceptibility of a state statute to a construction by the state courts that would avoid or modify the constitutional question." *Zwickler v. Koota*, 389 U.S. 241, 248-49 (1967). To the extent that "special circumstances" are an additional element that must be present for *Pullman* abstention to be appropriate, for the reasons set forth above, this Court finds that this special circumstance is present here.

8

1. Nature of the right at issue

The Supreme Court has stated that "abstention is inappropriate for cases where statutes are justifiably attacked on their face as abridging free expression."[5] *City of Houston v. Hill*, 482 U.S. 451, 467 (1987), *quoting Dombrowksi v. Pfister*, 380 U.S. 479, 489 (1965). The Plaintiffs assert that Second Amendment rights should enjoy the same protection as First Amendment free expression rights, and thus this Court should categorically refuse to abstain in this case.

Putting aside the difficulty in attempting to compare and contrast the relative importance of constitutional rights and the absence of any cited legal authority for the proposition advanced by the Plaintiffs, this Court observes, as does Justice Powell's concurring opinion in *Hill*, 482 U.S. at 476 n. 4, that the reasons why free expression cases are particularly ill-suited for abstention has less to do with their categorical label and more to do with the interplay of federal and state law interests in such cases. Each of the cases that the Plaintiffs here cite in support of their argument, including *Zwickler v. Koota*, 389 U.S. 241 (1967), *Dombrowski*, and others such as *Hill* and *Baggett v. Bullitt*, 377 U.S. 360 (1964), involve individuals challenging state statutes restricting free expression as being vague or overbroad in violation of the First Amendment. In none of these cases did the Supreme Court simply declare that "because free expression rights are implicated, abstention is inappropriate." Rather, a close reading of all those cases reveals that common reasons why the Supreme Court found *Pullman* abstention to be inappropriate. In

---

[5] But see *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 509-10 (1985) (O'Connor, J., concurring) ("the Court of Appeals asserted that *Pullman* abstention should almost never apply where a state statute is challenged on First Amendment grounds because the constitutional guarantee of free expression is, quite properly, always an area of particular federal concern. This Court has never endorsed such a proposition. On the contrary, even in cases involving First Amendment challenges to a state statute, abstention may be required to avoid unnecessary friction in federal-state relations, interference with important state functions, tentative decisions on questions of state law, and premature constitutional adjudication.") (internal quotes and citations omitted).

9

these cases, (particularly with regard to vagueness challenges), the Court found that was no likelihood of a single, conclusive determination of state law that would eliminate the need for a federal constitutional analysis – that the state courts would only be able to render a string of sequential rulings in piecemeal fashion that might resolve the constitutional question if viewed in aggregation. *See e.g. Zwickler*, 389 U.S. at 397 ("appellee concedes that state court construction cannot narrow its allegedly indiscriminate cast and render unnecessary a decision of appellant's constitutional challenge"); *Baggett*, 377 U.S. at 378 ("It is fictional to believe that anything less than extensive adjudications, under the impact of a variety of factual situations, would bring the oath within the bounds of permissible constitutional certainty"). The Court also found in some cases that there was no meaningful state law question presented. *Dombrowski*, 380 U.S. at 490 (law enforcement "invoked. . . criminal process [against the appellant] without any hope of ultimate success [ ] only to discourage appellant's civil rights activities," and in such circumstances, "the interpretation ultimately put on the statutes by the state courts is irrelevant"); *Hill*, 482 U.S. at 471 ("here, there is no uncertain question of state law whose resolution might affect the pending federal claim").

Neither of these situations is present here. The question of whether the Ordinances regulate matters of local concern (such that they are a permissible exercise of Boulder's home rule rights), or whether they regulate matters of general statewide concern (such that they are impermissible under C.R.S. § 29-11.7-103), is concrete, ripe, capable of conclusive resolution in a single state court lawsuit, and, if resolved against Boulder, will entirely dispositive of the claims herein without requiring any adjudication of the federal constitutional issues. Thus, the factors that sometimes lead the Supreme Court to assert that free expression cases generally are

not suitable for *Pullman* abstention are not present here.

        2. Delay

Of course, the crux of the Plaintiffs' argument that abstention would burden their fundamental rights is based on the assumption that resolving the state law issue in state court will interpose a lengthy delay before this Court might thereafter reach the federal constitutional issues, and that throughout that time, the Plaintiffs will suffer an ongoing intrusion into their Second Amendment rights. The Court understands and appreciates this argument, but finds it unavailing. The notion that individuals will continue to suffer an ongoing alleged deprivation of constitutional rights is, unfortunate as it may be, baked into the concept of abstention. The Supreme Court's rulings make clear that, as between the risk of individual constitutional deprivations and the risk of premature constitutional adjudication, the Court should defer to the latter over the former.

Nevertheless, the Supreme Court is troubled by that problem and has recently offered at least one possible approach in mitigation. In *Expressions Hair Design v. Schniderman*, 137 S.Ct. 1144, 1156 (2017), it explained that "abstention is a blunt instrument" that "sends the plaintiff to state court" and "entails a full round of litigation in the state court system before any resumption of proceedings in federal court." *Expressions* offered, as an alternative, the possibility that the federal court could certify the state law question directly to the state's supreme court, "reducing the delay, cutting the cost, and increasing the assurance of gaining an authoritative response." *Id.* Colorado permits this Court to certify a question directly to the Supreme Court if: (i) the question of state law would be determinative of the case, and (ii) it appears that there is no controlling precedent from the Colorado Supreme Court on the issue. Colo. App. R. 21.1(a). Both criteria are met here, and, as the Court informed the parties at the hearing in this matter, it

11

would offer to make such a certification, subject to the parties stipulating to all the facts pertinent to the issue. Colo. App. R. 21.1(c)(2).

For whatever reasons, the parties were unable to come to an agreement regarding certification of the state law issue to the Colorado Supreme Court. That failure to agree, although unfortunate, is not a basis to otherwise alter the Court's conclusion that abstention is warranted here.

## **CONCLUSION**

For the foregoing reasons, the Court finds that it is appropriate to exercise *Pullman* abstention in this action, deferring the consideration of the Plaintiffs' federal constitutional claims until the state court can conclusively resolve the question of whether the Ordinances are preempted by C.R.S. § 29-11.7-103. The Court accepts the Plaintiffs' suggestion that a stay of this action, rather than dismissal, is an appropriate way to effectuate the abstention, and the Court therefore stays this action in its entirety. However, because of the unknown time frame in which the state court can be expected to finally resolve the question, it is impractical to leave this case open indefinitely. Accordingly, the Clerk of the Court shall administratively close this case, subject to any party moving to reopen it upon a showing that the state courts have fully resolved the state law issue herein.

Dated this 17th day of September, 2018.

**BY THE COURT:**

_____

Marcia S. Krieger
Chief United States District Judge